**Earl David SHAFFER, Appellant,**

v.

**Stephen JONES, Appellee.**

**No. 55130.**

Court of Appeals of Oklahoma, Division No. 2.

June 8, 1982.

Rehearing Denied July 2, 1982.

Certiorari Denied Sept. 2, 1982.

Released for Publication by Order of Court of Appeals Sept. 10, 1982.

Earl David Shaffer, pro se.

James D. Fellers, K. Nicholas Wilson, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for appellee.

BOYDSTON, Presiding Judge.

Client Earl David Shaffer sued Stephen Jones, his former attorney, for malpractice arising from a child custody dispute. Client appeals from summary judgment granted in favor of Attorney. Client appeared pro se throughout the proceedings, including this appeal. We reviewed the record and found no disputed facts nor any evidence tending to support the allegations in Client's fourth amended petition. We affirm.

The facts of this dispute are uncontroverted. In November 1971, Client filed for divorce in Oklahoma County from his wife, Sue Allen Shaffer, now May. She was served by publication. A default decree of divorce was entered in January 1972 wherein custody of the minor son was awarded to the defaulting wife. Client, apparently in total control of the litigation, reserved reasonable visitation rights for himself.

In November 1973 Client filed a petition asking the court in Jefferson County, Texas, to modify the decree to extend his visitation rights or, in the alternative, to enforce his existing visitation rights. Ex-wife is a Texas resident.

The Texas action was apparently abandoned because Client hired Attorney Jones who filed a motion to modify the decree in Oklahoma County on September 9, 1974. The motion alleged the neglect and failure of Ex-wife to furnish adequate medical treatment for the child. As part of this action, Judge LaFon issued an ex parte order awarding temporary custody of the child to Client. At the same time, hearing for permanent custody was set for November 1, 1974.

In response, Ex-wife filed a special appearance, objection to jurisdiction and motion to quash on October 28, 1974. Attorney received his copy of the special appearance on the date of hearing, November 1; consequently, he was unprepared to meet this challenge to jurisdiction. He requested and received a continuance.

Later that same day, Ex-wife and her new husband "snatched" the child from Client near the entrance to the motel where he was staying and returned to Texas with the child.

Client blamed his loss of custody on Attorney and fired him right after the child was taken by its mother. Another attorney eventually concluded the custody matter.

At the next hearing, in February 1975, Judge Cannon sustained Ex-wife's motion to quash. Another motion was made and an order was issued in April 1975 by Judge Graham commanding Ex-wife in Texas to produce the child before Oklahoma courts and to respond to the motion to modify. This time her motion to quash was overruled. Ex-wife then filed a writ of prohibition in the Oklahoma Supreme Court which was granted, denying jurisdiction of the lower court to hear the matter. *May v. Graham,* Okl.Sup.Ct., No. 48,495 (June 16, 1975) (unpublished).

Client then filed suit against Attorney alleging malpractice and conspiracy. Appealing from summary judgment granted in favor of Attorney, Client urges four grounds of error which warrant discussion:

1. That Attorney was negligent by not being prepared to present the motion on November 1, 1974;

2. That Attorney conspired with Ex-wife to permit the child to be forceably removed from the jurisdiction;

3. That the court erred by not permitting Client to file a fifth amended petition; and,

4. That trial judge should have been disqualified.

## I

■ Client argues under his first proposition that the court erred as a matter of law by not finding Attorney was negligent. Client's fourth amended petition alleged in part:

"At said hearing, defendant exhibited outrageous and unprofessional conduct and care entrusted to him by being unprepared to argue the issues. Because of defendant's failure to be properly prepared, which he admitted in open court, ... plaintiff eventually lost permanent custody of his minor child ...."

The record indicates Attorney did not have notice of the motion filed by Ex-wife until the morning of the hearing. Procedurally, there is no question that objections to the court's jurisdiction must always be resolved before a hearing can be had on the merits. It was a serious motion, not to be taken lightly, especially when the opposing party is, in fact, a non-resident.

Under these circumstances, the request for continuance cannot form the basis for a cause of action sounding in negligence. Attorney received notice of the motion immediately prior to the hearing, and his "confession" to the court, referred to in the petition, is nothing more than the truth which formed the basis for the requested continuance. It is not, as contended by Client, an admission of incompetence. On the contrary, these matters not only involve intricate issues of law, but factual development as well and require careful consideration and preparation.

In addition, we note that even with careful presentation Client eventually lost on this very issue—after the issue had been considered by two trial judges and nine supreme court justices. The delicacy of such mixed questions of fact and law involved in interstate litigation are known only too well by experienced attorneys. Attorney's conduct may have come closer to actionable negligence had he *not* requested more time to prepare.

■ In final analysis, absent very special facts not pleaded or present here,[1] when the client has discharged his first attorney, hired another attorney, and had his day in court, the subsequent loss of the case on its merits cannot form the basis of actionable negligence against the original attorney. Not every mistake humans make gives rise to legal damages—recovery is limited to those mistakes which *proximately cause* damages. *Loper v. Austin,* Okl., 596 P.2d 544, 546 (1979); *Green v. Sellers,* Okl., 413 P.2d 522, 528 (1966); *Ellis v. Hollis,* Okl., 398 P.2d 832, 834 (1965). The facts pleaded here in no way proximately caused or contributed to Client's eventual loss of custody. *Allred v. Rabon,* Okl., 572 P.2d 979 (1977); *Collins v. Wanner,* Okl., 382 P.2d 105 (1963).

## II

■ As his second point of error, Client argues the court erred as a matter of law by not finding that Attorney conspired with Ex-wife to "snatch" the child at the motel. Attorney denied the allegation. Client offered evidence in support of his claim to the effect that Attorney advised Client to return to the motel after the hearing was continued. An affidavit was filed by a friend of Client which alleged he, John

1. We can conceive of special situations when an attorney has irretrievably lost evidence or the use of a witness' testimony or has incurred extraordinary legal expenses caused by his neglect which would form the basis of a legitimate claim against him.

Clausen Curry, told Attorney to tell Client not to go back to the motel. No explanation was offered as to why Curry failed to personally warn his friend. Client claims Attorney failed to pass this warning to him. For several reasons, we find this evidence far short of the proof required to sustain an allegation of conspiracy.

First, we are required to ignore all allegations framed as legal conclusions. The cause of action is pleaded about 95 percent conclusory, except for the few facts set forth above. It is elementary that allegations and conclusions do not replace proof. *Weeks v. Wedgewood Village, Inc.,* Okl., 554 P.2d 780, 785 (1976).

Second, to make a prima facie case of conspiracy, Client's proof must be clear and convincing and do more than just raise suspicion. *Holland v. Perrault Bros., Inc.,* Okl., 311 P.2d 795 (1957); 15A C.J.S. *Conspiracy* § 30 (1967).

Third, the Oklahoma Supreme Court has ruled that circumstantial evidence is insufficient to establish a prima facie case of conspiracy where the acts alleged are as consistent with lawful purposes as with the alleged unlawful scheme. *Nissen v. Andres,* 178 Okl. 469, 63 P.2d 47 (1936).

We find the facts offered to support the cause of action fall short of the mark.

### III

Client next argues there is reversible error because the judge refused to allow him to amend his petition for the fifth time and refused to disqualify himself. These last two propositions are considered together because each involves the court's discretionary powers.

■ Client appeared pro se. We observe from the quality of the pleadings and argument which appear of record that Client did an adequate job of self-representation despite his obvious lack of experience. Many technical and substantive deficiencies are clear, however. For instance, Client complains of one remark made by the trial judge which he urges demonstrates bias. The remark does not appear in the record. The alleged offending statement, "I can't dismiss this case with prejudice, but I wish I could," if true, is capable of such an inference. However, a review of the entire record demonstrates conclusively that the court's judgment was not a product of prejudice and bias.

Judges are, and always will be, prejudiced and biased to some extent on occasion. Trial judges are people, too, and share the same cross-section of feelings and human frailties as the rest of us. The central issue involved in a motion to disqualify is whether the prejudice, if it exists at all, is so strong and pervasive as to unfairly influence the outcome of the case. *T.R.M. v. State,* Okl.Cr.App., 596 P.2d 902 (1979);[2] 48A C.J.S. *Judges* § 109 (1981). It is the trial judge's duty to set aside his personal feelings in *every* case that comes before him and to try the case on the facts and evidence. This is a task trial judges do everyday, and, I might add, judging by the records coming before us, routinely do effectively.

The remark, even if it was said, does not by itself constitute conclusive grounds for disqualification. It was allegedly made on February 18, 1977. The court did not, in fact, dismiss the case with prejudice at that hearing. The case was not finally dismissed until March 1980. This was after four amended petitions had been filed and argued resulting in several partially sustained demurrers and, finally, in a sustained summary judgment. The motion to disqualify the judge was not filed until October, 1979, more than two years after the remark was allegedly made.

On the other hand, the record is replete with instances when the trial judge was not

---

2. In this case, a motion alleged bias and prejudice of juvenile judge because complaining witness was a personal friend of the judge's daughter and the family. "In criminal cases *as in civil cases,* such a motion [to disqualify for prejudice] is addressed to the sound discretion of the judge, and unless a clear abuse of that discretion is shown, this Court will not reverse the trial judge's ruling." (emphasis added)

only fair with Client but went out of his way to see that his rights were protected. As an example, on March 4, 1977, the court stated:

> Now, Mr. Shaffer, I say again, in all kindness, that you have my good offices. If you desire, I will call this informally to the attention of the Chief Justice if you tell me that you are unable to get an attorney at the bar to represent you because you are suing an attorney.

> Every litigant in this court has a right to be represented by counsel, even in a civil case. You have a right to appear pro se, but I advise you, as I have throughout this matter, that your rights, in my opinion, will not be adequately represented nor taken—nor preserved in this matter if you continue to appear pro se.

We find from the entire record that the judge did not err by refusing to disqualify himself. On the contrary, he showed great patience. If anything, the judge should be commended for his patience, which at times bordered on unnecessary indulgence.[3] The court is not required to present a pro se litigant's case for him. *Jefferson v. British*

*Am. Oil Prod. Co.,* 193 Okl. 599, 145 P.2d 387, 389 (1943).

 Finally, it is discretionary with the court whether to allow amendments. 12 O.S.1981 § 317; *Cook v. Clinkenbeard,* Okl., 524 P.2d 27 (1974). Client filed four amended petitions. In at least one instance, he repeated the same mistake he made in prior amendments. In his application to amend his petition for the fifth time, he raised no significant new material or new allegations that had not been previously raised and decided. It appeared futile to the trial judge to permit another amendment. We find no abuse of discretion in that judgment. *See Maupin v. Nutrena Mills, Inc.,* Okl., 385 P.2d 504 (1963); *Sanders v. McCammon,* Okl., 365 P.2d 730 (1961). Judgment of trial court is affirmed. Costs on appeal taxed against Client.

BACON and BRIGHTMIRE, JJ., concur.

---

**3.** Client's frustrations with his inability to properly present his case abound in the record. At one point in his brief he declared:

> "This whole case involves a coverup of malpractice, conspiracy, fraud and dishonesty by Oklahoma lawyers and judges."

In a federal court proceeding against the trial judge, Ex-wife's former attorney, and his own attorney, he filed a motion to "disqualify each and every federal district judge ..." on the grounds they all have social, fraternal, and emotional interests in common. This case was dismissed by the federal court.