**H. G. THOMPSON and Laverne Thompson, Plaintiffs in Error,**

**v.**

**Gerald S. RORSCHACH and Naomi O. Rorschach, Defendants in Error.**

**No. 41022.**

Supreme Court of Oklahoma.

July 19, 1966.

Alfred M. Parsons, Shawnee, for plaintiffs in error.

Goode & Henson, by Almon E. Henson, Shawnee, for defendants in error.

HALLEY, Chief Justice.

Gerald S. Rorschach and his wife Naomi O. Rorschach, brought this action in the District Court of Pottawatomie County to secure a declaratory judgment removing certain restrictions from a deed to real estate purchased by them from H. G. Thompson and his wife, Laverne Thompson. The parties will be referred to as they appeared below, with Rorschach and wife as plaintiffs and Thompson and wife as defendants. The trial court found for the plaintiffs, and ordered the restrictions removed from the deed. Defendants then perfected their appeal here.

The pleadings and evidence in the case showed that on March 10, 1954, defendants conveyed to plaintiffs, by a general warranty deed, with a survivorship clause, the following described real property, located in Pottawatomie County, to-wit:

> The North Half of Lot Two (2), McDivitt's Addition to the City of Shawnee, Oklahoma,

and that the deed contained the following restriction:

> "It is understood and agreed between the parties hereto, their heirs, executors and

assigns that as a part consideration of this deed the above described property shall be used for residential purposes only and no other building or buildings other than private residences with garages, attached or detached, shall be erected or placed upon said described property and said restriction is to run with the land and a violation of said restriction shall work a forfeiture of title to first parties, their heirs, executors and assigns."

The property in question is located at the southwest corner of the intersection of Center Street and Independence Avenue in the City of Shawnee. The defendant Thompson was shown to be the builder and developer of a tract of land immediately east of the subject property, which tract carried the same restriction, and that to the northeast of the subject property, defendant Thompson had developed and built many homes, all of which carried a similar restriction in their deeds.

It was also shown that at the time plaintiffs purchased from the defendants, that the defendant Thompson, in developing the area across Center Street to the east from the plaintiff's property, had reserved four lots in that addition for commercial buildings or a shopping center, but that in the period of time from plaintiff's purchase to time of trial, defendants had either constructed themselves or permitted the construction of residences on each of the four lots.

Plaintiff's testimony showed that they bought the property with full knowledge of the restrictions which were set out in the deed, and that at the time of purchase, they intended to build a home on the property, but that they had changed their minds because of the traffic on Harrison Street, and the fact that the crossing their teen-age daughter would have to use was not protected by a traffic light. It was also shown by plaintiffs that they had attempted to get the defendants to remove the restriction from their deed, and that they were unable to sell the property because of the restriction and that they had entered into a contract with the First Church of God for the sale of the property, conditioned upon the removal of the restriction. That a church would be constructed on the property if the sale went through.

The evidence further showed, in behalf of plaintiffs contentions, that his was the only lot in McDivitt's addition that contained this particular restriction. That immediately to the south of plaintiff's property there was a cemetery, and from plaintiff's property to Harrison Street on the west, all development was commercial in nature, and that from 1954 to time of trial, there had been considerable change in the condition and use of the properties facing on Independence between Center Street and Harrison Street, with the properties being developed commercially.

During the course of the trial, the trial court viewed the property, and after overruling defendant's motion for a directed verdict, and plaintiff's motion for a judgment on the pleadings, heard final argument from both parties, and entered his judgment, after making his findings of facts and conclusions of law, which can be summarized as follows: The sale to plaintiffs by the defendants; the restriction in the deed; the location of the property with a description of the adjacent property and its uses; that at the time of the purchase by plaintiffs, the four lots across Center Street, to the east, were vacant and had a sign on them to the effect that a shopping center would be built there, that these four lots could either be used for retail commercial or residential buildings; that residential buildings have since been built on them; that plaintiffs paid $3,500 for the property and had a contract to sell it to a church.

The trial court's conclusions of law were to the effect that there was no question of protecting the surrounding property since the properties in Thompson Heights Addition (across Center Street to the east) were purchased without regards to or knowledge of any restrictions on a lot in McDivitt's Addition; that the purpose of placing the restriction in plaintiff's deed was to protect

the defendants as to the erection of a business on the lots, since the defendants themselves had lots immediately east across the street, where they had given notice of their intention to build a shopping center and had reserved the lots for the possibility of business purposes, but since no business was built on these lots, the restrictions placed on plaintiff's lots no longer benefitted the defendants; that while the erection of business properties in close proximity is not sufficient to justify the removal and cancellation of restrictions, it is of some evidence, and is not to be ignored; that the original purpose and intention of the parties creating the restriction has been eliminated without fault of the plaintiffs herein so that if restrictions were ever of benefit, that benefit no longer exists in any manner to the defendants, nor to anyone else since the original purpose obviously was not to make the lots of extraordinary value for dwellings but was for a protection which is no longer necessary or needed, and that the equities in the case were on the side of the plaintiffs.

Defendants earnestly contend that the trial court failed to properly interpret the facts of the case, and that he also failed to apply the proper law to the facts.

A review of all the evidence, according it careful consideration, convinces us that the trial court committed no such errors.

■ The rule is, and we are committed to it, as stated in the case of Christ's Methodist Church v. Macklanburg, 198 Okl. 297, 177 P.2d 1008:

"Covenants restricting the use of real property, although not favored, will nevertheless be enforced by the courts, where the intention of the parties in their creation is clear, and the restrictions and limitations are confined within reasonable bounds. In construing such covenants, effect is to be given to the intention of the parties as shown by the language of the instrument, considering in connection with the circumstances surrounding the transaction and the object sought to be accomplished by the parties."

From the evidence, it is clear that the intention of the parties (defendants being the movant therein) was to prohibit any use of the subject property other than for residential purposes. Such intent is clear from the language used in the deed, and it cannot be said that such restriction is unreasonable.

■ We are also committed to the rule that is stated in the case of Sanders v. McCammon, Okl., 365 P.2d 730, that:

"In determining whether a court of equity should refuse to enforce valid restrictions on the use of real property because of change of conditions of the surrounding property, the test is whether the original purpose and intention of the parties creating the restrictions has been so destroyed by the changed conditions, without fault on the part of those who seek to be relieved, that the restrictions are no longer of substantial benefit to the residents, and the original purpose cannot be reasonably effected by granting equitable relief. Each case must be decided on the equities as they are presented."

See also Noyes v. McDonnell, Okl., 398 P.2d 838.

From the facts presented here, it is undisputed that the primary purpose of the restrictive clause was to afford protection, of a sort, from business property being placed on the subject property, which was located just across the street from four lots, where defendants had announced their intention of constructing a shopping center. The abandonment of this intention, on the part of the defendants, and the subsequent erection of residences on the four lots, cannot be laid at the door step of the plaintiffs. They did not, and indeed could not, have exercised any influence, one way or the other, on the defendants, in changing the intended use of the four lots from commercial to residential.

■ We are of the opinion and so hold that the evidence presented by the plaintiffs amply meets the test set out in Sanders v. McCammon, supra, and that the trial court did not err in finding for the plaintiffs and

ordering the removal of the restrictions from the deed.

In Wood v. Knox, Okl., 277 P.2d 982, it is stated:

"In a case of purely equitable Cognizance, the decision of the trial court on the evidence will not be reversed unless against the clear weight thereof."

There is ample evidence in this record to support the findings of the trial court. The ruling herein, as above stated, renders it unnecessary to discuss the other questions raised by the defendant.

Judgment affirmed.

JACKSON, V. C. J., and WILLIAMS, BLACKBIRD and IRWIN, JJ., concur.

DAVISON and BERRY, JJ., concur in result.