NORTHCUTT, Judge.
Patsy V. Hough is chagrined by several financial aspects of the judgment dissolving her marriage to David A. Hough. We affirm in all respects save the value assigned to one of the Houghs’ businesses. We reverse and remand with instructions to redetermine the value of that asset.
At issue is the worth of the parties’ vending business, which owns and operates coin-operated air and vacuum machines on the premises of convenience stores and service stations. The Houghs started the enterprise in 1985 with a. handful of machines. By the March 1998 valuation date it had grown substantially, comprising approximately 500 machines at locations throughout West Central and Southwest Florida. It was owned by a closed corporation, the stock of which was titled in Mr. Hough, who was heavily involved in the day-to-day management and operation of the company.
Three experts testified regarding the value of the business. In the course of forming their opinions all three employed the income capitalization method, wherein they calculated the annual net income of the business and then applied a capitalization rate. All explained that higher income logically results in higher value. On the other hand, the capitalization rate increases with risk, thus mathematically decreasing the price a hypothetical buyer in a fair market would be willing to pay for the company.
Applying this method, the witnesses reached widely varied conclusions. Mrs. Hough’s two experts posited the company was worth $1 million and $1.6 million, respectively. Mr. Hough’s expert valued it at only $310,000. The circuit court endorsed the latter and factored it into an equal division of the marital assets and liabilities which, among other things, left the business with Mr. Hough and awarded Mrs. Hough an offsetting lump sum payment.
By far, the most disputed trial issue affecting the value of the Houghs’ business concerned whether and to what degree its continued success depended on personal good will attributable to Mr. Hough. Under the rule of Thompson v. Thompson, 576 So.2d 267 (Fla.1991), and its progeny, Mr. Hough sought to emphasize this factor so as to reduce the distributable value of the asset, whereas Mrs. Hough endeavored to do the opposite. In large part, the difference in the experts’ opinions reflected their differing assumptions regarding this factor.
On appeal, Mrs. Hough’s best-scenario argument would have us reject the facts on which Mr. Hough’s expert based his assumptions about the existence of personal good will attributable to Mr. Hough. We are unable to do so because our careful review of the extensive record discloses evidence, albeit contested, to support those assumptions. Although we might have taken a different view of the facts, we must defer to the trial court’s judgment in this regard.
Even so, it is apparent that Mr. Hough’s expert misapplied those assumptions when valuing the business. He testified that the company derived a large portion of its income from a handful of accounts that were freely or easily terminable by the customers and depended on Mr. Hough’s store of personal good will. When devis *59 ing the net income variable for his income capitalization calculation, the expert deducted revenue attributable to those accounts on the assumption that they would be lost if Mr. Hough no longer owned the business. At the same time, however, he increased the capitalization rate based in part on the risk that those accounts would be lost. In other words, the expert’s capitalization rate reflected a risk that he had already eliminated on the other side of the equation. This overemphasized the effect of Mr. Hough’s personal good will by factoring it into the calculations twice, resulting in an artificially low valuation.
Proper valuations of assets are critical to the propriety of an equitable distribution scheme. Cornette v. Cornette, 704 So.2d 667 (Fla. 2d DCA 1997). We reverse and remand with instructions to redetermine the distributable value of this asset and to make corresponding adjustments to the final judgment necessary to maintain an equal division of the marital estate.
Affirmed in part, reversed in part and remanded.
PATTERSON, A.C.J., and DAVIS, J., concur.