2009 OK CIV APP 59

**In re the Marriage of Ginette F. McQUAY, Petitioner/Appellee,**

v.

**Johnnie Lee McQUAY, Respondent/Appellant.**

No. 105,863.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 21, 2009.

D.D. Hayes, Hayes Law Office, Muskogee, OK, for Petitioner/Appellee.

Warren Gotcher, Gotcher, Belote and Beaver, McAlester, OK, for Respondent/Appellant.

KENNETH L. BUETTNER, Judge.

¶ 1 A Decree of Divorce and Dissolution of Marriage was filed January 9, 2008 with respect to the marriage of Petitioner/Appellee Ginette F. McQuay (Wife) and Respondent/Appellant Johnnie Lee McQuay (Husband). Husband filed a motion for new trial challenging the valuation of the parties' concrete business. The motion for new trial was denied May 7, 2008. Based upon an improper valuation of the concrete business, we reverse.

¶ 2 In pre-trial mediation, the parties reached agreement as to the value of most of the personal and real property of the marital estate. Husband contends that the trial court erred in valuing the concrete business which was awarded to him. The trial court valued the goodwill of the concrete business at $350,000 and the equipment at $209,500 (net $123,000). These values placed Wife's net award at $519,749.50 and Husband's net award at $590,600. Husband specifically claims that the court should have valued the business at the stipulated equipment value, $123,000.

¶ 3 Husband bases his alleged error on two grounds. First, he argues that the court erred in valuing the goodwill of the business at $350,000, when the business had no goodwill because the parties had already stipu-

lated to the value of the equipment and equipment debt. Second, he claims that Wife's expert witness was not qualified under the law and facts to render an opinion on the value of the goodwill of the business. "An action for divorce, alimony and division of property is one of equitable cognizance, and the trial court's judgment will be left undisturbed unless found to be clearly against the weight of the evidence." *Johnson v. Johnson*, 1983 OK 117, ¶ 15, 674 P.2d 539, 544.

¶ 4 Husband's concrete business is a sole proprietorship. Wife called the parties' CPA to testify at the October 4, 2007 trial with respect to the value of the business. He had prepared their personal and business tax returns through 2004. He had been an accountant since 1968 and a CPA since 1988.[1] The CPA used Revenue Ruling 59–60 as a basis for the business evaluation, which he testified was how the IRS evaluates closely-held businesses (as well as others). He used the tax returns to review gross proceeds and net income of the concrete business. He stated that he also used guidelines from the American Institute Journal of Accountancy. According to the CPA, Revenue Ruling 59–60 states that because of so many variables in a closely-held business, it is right to use goodwill if certain circumstances apply.

¶ 5 He testified about the three methods used when evaluating goodwill, concentrating on the market value method and the net income approach. He stated that the market value method was the standard for closely-held businesses such as a law firm or accounting business. The net income approach was used for salary-based types of businesses. He testified that the fair market value of the concrete business, using the market value approach, which necessitates a willing seller and a willing buyer, was between $588,000 and $743,000. The fair market value of the business using the net income approach was between $464,000 and $634,000. Both of these sets of figures in-

cluded the stipulated amount of $123,000 value of the equipment. He made adjustments for depreciation, added back in the salary of the McQuay's son, and also stated that the son had excessive auto expenses.[2]

¶ 6 At this point, Wife moved for the admission of the CPA's report. Husband objected, stating "I don't know that he is qualified to appraise or value a sole proprietorship." The Court replied: "All right. Again, if it's his opinion, I'll admit that." The only other information regarding the CPA's qualifications was his resume.

¶ 7 The CPA's opinion of value included two important factors which he claimed would be included in any agreement to sell the business. First, it would include a non-compete clause, and second, would include the seller's participation in the business for an undetermined transition period.

¶ 8 " 'Goodwill' has been defined as the custom or patronage of any established trade or business; the benefit or advantage of having established a business and secured its patronage by the public." *Freeling v. Wood*, 1961 OK 113, ¶ 12, 361 P.2d 1061, 1063. "The 'goodwill' value of any business is the value that results from the probability that old customers will continue to trade with an established concern." *Id.* In a case involving the goodwill of a medical practice, the Supreme Court stated, "If goodwill is to be divided as an asset, its value should be determined either by an agreement or by its fair market value. Both of these methods are widely accepted for valuing goodwill." *Mocnik v. Mocnik*, 1992 OK 99, ¶ 21, 838 P.2d 500, 505. "Market value is the price negotiated by a willing buyer, not obligated to buy, and a willing seller, not obligated to sell, in a free and open market. The term market value has been construed as synonymous with actual value." *Howell v. Texaco, Inc.*, 2004 OK 92, ¶ 17, 112 P.3d 1154, 1159. If market value cannot be established by an

---

1. None of the trial exhibits are in the appellate record and were not designated by Appellant for inclusion. The factual information this Court has reviewed has been gleaned from the transcripts of either the trial or the Motion for New Trial.

2. On cross-examination, the CPA testified he had no other knowledge of the parties' business, did not know of the sales of any concrete business in the county, or how many cement masons were in the county. He did not know what the business was called, or what number of customers would stay with the business if it were sold.

actual arms-length sale, then proof from similar sales in the vicinity can be used to establish market value. The more similar, the "... more probative and compelling are their sales in determining the prevailing market price." *Id.* at ¶ 19, p. 1159.

¶ 9 In *Mocnik,* the Supreme Court held that the goodwill of the medical practice could not be considered a marital asset because there was no way for the husband to recoup the goodwill value in any manner other than continued professional services with the business. His stock ownership was subject to a Stock Purchase Agreement that provided a specific valuation formula should he leave the business. There was no other market for goodwill. Thus, the goodwill was tied to the concept of a going concern which reflected what the husband could earn in the future. However, the court pointed out that future earnings are not marital property.[3]

¶ 10 In *Travis v. Travis,* 1990 OK 57, 795 P.2d 96. the Supreme Court held that under the facts of the case, a sole practitioner attorney did not have goodwill that was a divisible marital asset. The court quoted *Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833 (1988) for these principles:

(1) Where goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of a business.

(2) If the goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual.

*Prahinski,* 540 A.2d at 843, citing *Wilson v. Wilson,* 294 Ark. 194, 741 S.W.2d 640, 647 (1987); *Taylor v. Taylor,* 222 Neb. 721, 386 N.W.2d 851, 858 (1986).

¶ 11 In this case, the CPA attributed the goodwill he was valuing solely to the reputation of Husband as a cement mason. He agreed that the value depended upon Husband not competing with the business, and continuing to participate in the business after a sale. This court has previously held that a court cannot impose a non-compete provision on a party to enhance the value of a marital asset. *Favell v. Favell,* 1998 OK CIV APP 22, 957 P.2d 556, 561. Similar to *Mocnik,* requiring Husband to continue to work in the business to realize goodwill value includes his future earnings in the valuation, which are not divisible marital assets. The CPA agreed that if an owner like Husband dies or is unavailable, the goodwill is gone, and you are left with the value of the tangible assets. The CPA also testified that in this case, goodwill was the value of Husband's expertise in the business.

¶ 12 Under the facts of this case, the concrete business was dependent upon the personal reputation of Husband. There is no evidence of goodwill as a marketable business asset distinct from Husband's reputation. If Husband died, started another business, or did not agree to participate in the business upon a sale, there is no evidence of marketable goodwill. As a result, the trial court's goodwill valuation $350,000 is against the weight of the evidence.

¶ 13 Husband's second proposition that the CPA was not qualified to render a valuation opinion need not be addressed based upon our holding above.

¶ 14 The property division portion of the Decree of Divorce is reversed, and this case is remanded to the trial court for a new division of marital property omitting the goodwill valuation of the concrete business.

¶ 15 Reversed and remanded with instructions.

BELL, P.J., and ADAMS, J., concur.

---

**3.** *Mocnik* was distinguished in *Traczyk v. Traczyk,* 1995 OK 22, 891 P.2d 1277, which involved the goodwill of a podiatry clinic. There the expert had reviewed data from the sales of medical-related practices, which included the percentage of patients that would continue going to a clinic upon a sale. Goodwill was then determined by multiplying that number (32%) times the preceding year's gross income. The Supreme Court held that this evidence "adequately represents the fair market value of the goodwill of the Bethany Foot Clinic." *Id.* at 1280.